**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK**
_____

UNITED STATES OF AMERICA,

        v.

ROMAN DUNNIGAN,

        Defendant.
_____

17-CR-0119-A

**DECISION AND ORDER**

Defendant Roman Dunnigan has filed objections to Magistrate Jeremiah J. McCarthy's Report and Recommendation (Docket No. 43), which recommends denying Dunnigan's motion to suppress. For the reasons stated below, the Court adopts Judge McCarthy's recommendation in its entirety.[1]

## BACKGROUND

Dunnigan does not object to Judge McCarthy's factual findings, which the Court adopts as its own. Thus, the Court only briefly summarizes the facts relevant to Dunnigan's objections.

Dunnigan and his co-defendant, Henry Lloyd, were pulled over by Houston Police Officer Francisco Gomez after Officer Gomez witnessed Dunnigan's car commit several traffic infractions. Officer Gomez separated Dunnigan and Lloyd and questioned them while his partner ran warrant checks. Dunnigan and Lloyd gave conflicting answers to some of Officer Gomez's questions. Those conflicting answers, combined with information Officer Gomez had received that Dunnigan and Lloyd were "possible narcotics carrier[s]," caused Officer Gomez to become suspicious that Dunnigan and

---

[1] Dunnigan's co-defendant, Henry Lloyd, did not file objections to the Report and Recommendation. The Court, however, will defer ruling on Judge McCarthy's recommendation as to Lloyd until issues raised by Lloyd's recent letter to the Court (Docket No. 52) can be resolved.

Lloyd "were involved in criminal activity." Tr. 181:17-20. Officer Gomez therefore requested that a narcotics dog sniff Dunnigan's car.

A dog arrived soon thereafter and alerted to the scent of narcotics in Dunnigan's car. Officers then searched the car and found a brick of cocaine in a box in the cargo area. Dunnigan and Lloyd were each charged with one count of conspiring to possess with intent to distribute, and to distribute, 500 grams or more of cocaine, in violation of 21 U.S.C. § 846, § 841(a)(1), and § 841(b)(1)(B).

Dunnigan moved to suppress the evidence found in his car and the statements he made after being pulled over. Judge McCarthy, to whom the Court referred this case for all pre-trial proceedings, held an evidentiary hearing and recommends denying Dunnigan's motion in its entirety. Dunnigan objects to that recommendation.

The Court reviews Dunnigan's objections *de novo*. 28 U.S.C. § 636(b)(1).

## DISCUSSION

**1.  Dunnigan's motion to suppress evidence**

Dunnigan first argues that the traffic stop violated the Fourth Amendment because the stop was "orchestrated" and "ordered," Docket No. 48 at 5, by Officer Tien Nguyen, who acknowledged during the suppression hearing that he would have searched Dunnigan's car "no matter what." Tr. 148:9-11. Dunnigan argues that this conduct "goes beyond mere pretext and illustrates an intentional disregard of Fourth Amendment protections and requirements by the law enforcement personnel in their utilization of a backdoor approach to gaining access to the Defendant and the contents of the vehicle." Docket No. 48 at 5.

Regardless of what Officer Nguyen's true reasons were for directing that Dunnigan's vehicle be stopped, it is well settled that "the constitutional reasonableness of traffic stops [does not] depend on the actual motivations of the individual officers involved." *Whren v. United States*, 517 U.S. 806, 813 (1996). This means that a police officer acts reasonably within the meaning of the Fourth Amendment if he uses a traffic stop "as a pretext to stop a car in order to obtain evidence for some more serious crime." *United States v. Gomez*, 877 F.3d 76, 97 (2d Cir. 2017). Indeed, the Second Circuit recently reaffirmed this principle, finding "unpersuasive" the same argument that Dunnigan makes here. *See id.* (rejecting argument that a police officer acts unreasonably when he "intend[s] to stop [the defendant] no matter what") (quotation marks and emphasis omitted). Thus, even in the case of a "pretext" stop, the only question under the Fourth Amendment is whether the officer had "probable cause or reasonable suspicion to initiate the traffic stop." *Id.* at 96. This "requires that [the] officer making [the] traffic stop have probable cause or reasonable suspicion that the person stopped has committed a traffic violation or is otherwise engaged in or about to be engaged in criminal activity." *Id.* at 86 (quotation marks omitted).

In his Report and Recommendation, Judge McCarthy "credit[ed] Officer Gomez's testimony, including his testimony that he observed [Dunnigan's] vehicle commit at least one traffic violation." Docket No. 43 at 9. Dunnigan does not contest this finding. *See United States v. Lawson*, 961 F. Supp. 2d 496, 499 (W.D.N.Y. 2013) ("The Second Circuit has instructed that where a Magistrate Judge conducts an evidentiary hearing and makes credibility findings on disputed issues of fact, the district court will ordinarily accept those credibility findings.") (citing *Carrion v. Smith*, 549 F.3d 583, 588 (2d Cir. 2008)). Thus,

the Court adopts Judge McCarthy's finding that Officer Gomez had probable cause to believe that Dunnigan committed a traffic infraction. The Court therefore adopts Judge McCarthy's conclusion that Officer Gomez's traffic stop was reasonable under the Fourth Amendment.

Dunnigan next objects to Judge McCarthy's conclusions regarding the events that followed the traffic stop. Specifically, Dunnigan argues that Officer Gomez unlawfully extended the stop by asking Dunnigan questions unrelated to his traffic infractions. Dunnigan claims that this conduct was unlawful in light of the Supreme Court's decision in *Rodriguez v. United States*, 135 S. Ct. 1609 (2015).

*Rodriguez* held that "a police stop exceeding the time needed to handle the matter for which the stop was made violates" the Fourth Amendment. *Id.* at 1612. In other words, the Court held, "[a] seizure justified only by a police-observed traffic violation . . . becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation." *Id.* (quotation marks and brackets omitted). The "mission of issuing a ticket" may include "ordinary inquiries incident to the traffic stop," such as checking the driver's license, checking for outstanding warrants, and inspecting the car's registration and insurance. *Id.* at 1615 (quotation marks omitted). By contrast, "a dog sniff . . . is not an ordinary incident of a traffic stop" because it "[l]acks the same close connection to roadway safety as the ordinary inquires." *Id.* Thus, if a dog sniff "prolongs—i.e., adds time to—the stop," the sniff violates the Fourth Amendment. *Id.* at 1616 (quotation marks omitted). If, however, the officer develops "independent reasonable suspicion" of crimes other than the original traffic violation, he may extend the

stop for the amount of time necessary to address the source of his suspicion. *Gomez*, 877 F.3d at 89.

Dunnigan argues that *Rodriguez* requires suppression in this case because Officer Gomez's questioning "went beyond the traffic infraction standard imposed by *Rodriguez*." Docket No. 48 at 6. Specifically, Dunnigan claims that Officer Gomez asked questions— for example, questions about the defendants' activities in Houston, questions about their travel companions, and questions about a box in Dunnigan's car—that were, in Dunnigan's view, not "ordinary inquiries incident to the traffic stop," but which were, instead, part of an improper effort to "detec[t] evidence of ordinary criminal wrongdoing." *Rodriguez*, 135 S. Ct. at 1615. Dunnigan, in other words, does not challenge Judge McCarthy's finding that, once Officer Gomez began questioning the defendants, he developed reasonable suspicion that justified extending the stop so that a narcotics dog could sniff Dunnigan's car.[2] Instead, Dunnigan argues only that Officer Gomez should not have asked the questions he asked because those questions had nothing to do with the traffic infraction that justified the stop.

The key to resolving Dunnigan's objection is what Officer Gomez's partner, Officer Kniepp, was doing while Officer Gomez was asking questions unrelated to the traffic stop. During that time, Officer Kniepp was conducting one of the "ordinary inquiries incident to [a] traffic stop": running warrant checks. *Rodriguez*, 135 S. Ct. at 1615. Thus, the time it took for Officer Gomez to develop reasonable suspicion did not impermissibly prolong the

---

[2] See Docket No. 48 at 6 ("The Lower Court's R&R finds that the reasonable suspicion necessary for a drug dog sniff existed in the conflicting statements given by the defendants to the officers but fails to address the fact that such questioning by the officers went beyond the traffic infraction standard imposed by *Rodriguez. It's not the answers to the questions which are pertinent herein, but rather the questions themselves and why they were asked.*") (emphasis added). Dunnigan also does not challenge Judge McCarthy's conclusion that, once the dog alerted to the presence of narcotics in Dunnigan's car, the police had probable cause to search the car.

5

stop because, during that time, Officer Kniepp was doing something he was entitled to do after Dunnigan was pulled over.

Dunnigan's only argument, then, is that Officer Gomez was constitutionally required to either (1) refrain from asking *any* questions while Officer Kniepp was running warrant checks, or (2) ask only questions related to the traffic stop. The Fourth Amendment, however, allows "an officer [to] ask unrelated questions to his heart's content, provided he does so during the supposedly dead time while he or another officer is completing a task related to the traffic violation." *United States v. Everett*, 601 F.3d 484, 492 (6th Cir. 2010) (citing, *inter alia*, *Arizona v. Johnson*, 555 U.S. 323 (2009) and *Muehler v. Mena*, 544 U.S. 93 (2005)).

To be sure, after he discussed the traffic infraction with Dunnigan, but before Officer Kniepp began running warrant checks, Officer Gomez asked Dunnigan and Lloyd questions unrelated to the traffic stop for approximately four minutes. For two reasons, however, the questions Officer Gomez asked during that time do not render the traffic stop unreasonable. First, many of Officer Gomez's questions concerned whether Dunnigan and Lloyd were on probation or parole, and the questions came after Officer Gomez informed Dunnigan and Lloyd that he would be running warrant checks. Because "determining whether there are outstanding warrants" is an "ordinary inquir[y] incident to [a] traffic stop," *Rodriguez*, 135 S. Ct. at 1615 (quotation marks and brackets omitted), it is difficult to conclude that these questions were impermissible. And second, assuming that Officer Gomez's other questions—which largely concerned where Dunnigan and Lloyd were from, where they were headed, and where they were staying—were not "ordinary inquiries incident to [a] traffic stop," *id.*, those questions did not "measurably

6

extend the duration of the stop." *Johnson*, 555 U.S. at 333. Moreover, the questions were innocuous, and they were not "relevant only to ferreting out unrelated criminal conduct." *Everett*, 601 F.3d at 495. *See also id.* at 495 (noting that "even" the courts of appeals that "took the most restrictive view toward traffic-stop questioning" before the Supreme Court's decision in *Muehler v. Mena*, 544 U.S. 93 (2005), "permitted certain locomotion-related inquiries not strictly directed to the motorist's conduct at the time of the stop, such as the motorist's travel history and travel plans . . . because such questions may help explain, or put into context, why the motorist was committing the suspicious behavior the officer observed") (quotation marks and brackets omitted).

The reasonableness of the questions Officer Gomez asked before Officer Kniepp began running warrant checks is underscored by the information Officer Gomez had received from Officer Nguyen. As Officer Gomez testified, Officer Nguyen informed him that the defendants' vehicle was a possible "narcotics carrier." Tr. 174:15-18. *See also* Tr. 181:17-20; *United States v. Colon*, 250 F.3d 130, 136 (2d Cir. 2001) (describing collective knowledge doctrine). In addition to witnessing Dunnigan commit traffic infractions, Officer Gomez therefore had reasonable suspicion to believe that "criminal activity may be afoot." *Terry v. Ohio*, 392 U.S. 1, 30 (1968). In light of this belief, Officer Gomez was permitted to ask the brief, simple questions he asked in an effort to dispel his suspicion. *See Florida v. Royer*, 460 U.S. 491, 500 (1983) ("[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. . . . [T]he investigative methods employed should be the least intrusive means reasonable available to verify or dispel the officer's suspicion in a short period of time.")

And, as noted above, once Officer Kniepp began running warrant checks, Officer Gomez was free to ask questions "to his heart's content*." Everett*, 601 F.3d at 492.

Thus, there is nothing in the Fourth Amendment that prohibited Officer Gomez from asking Dunnigan the questions he asked. Because Dunnigan does not challenge whether those questions led to reasonable suspicion to extend the traffic stop, and because Dunnigan does not challenge whether the dog's alert justified a search of Dunnigan's car, the Court adopts Judge McCarthy's recommendation that the Court deny Dunnigan's motion to suppress evidence found in his car.

### 2. Dunnigan's motion to suppress his statements

Judge McCarthy also recommends denying Dunnigan's motion to suppress statements he made during the traffic stop. Specifically, Judge McCarthy concluded that Dunnigan was not in "custody" for purposes of *Miranda v. Arizona*, 384 U.S. 436 (1966), when he was stopped for his traffic infractions.[3] Dunnigan objects to this recommendation.

Upon *de novo* review, and for the reasons stated in Judge McCarthy's Report and Recommendation (Docket No. 42 at 13-15), the Court concludes that, under "all of the circumstances surrounding the [alleged] interrogation," there was no "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Stansbury v. California*, 511 U.S. 318, 324 (1994) (quotation marks and brackets omitted). Dunnigan, in other words, was not in "custody" for *Miranda* purposes when Officer Gomez stopped him.

---

[3] Dunnigan originally argued that he was never read his *Miranda* rights. As Judge McCarthy noted, however, "[t]hat argument is belied by the videotape of the stop, which establishes that [Dunnigan] was Mirandized following his arrest." Docket No. 43 at 14. Thus, Dunnigan now asserts that he should have been read his *Miranda* rights earlier in the traffic stop.

Dunnigan argues that Judge McCarthy failed to consider Officer Gomez's testimony that Dunnigan "was not free to leave because [Officer Gomez] had reasonable suspicion to believe [Dunnigan] was involved in narcotics, criminal activity." Tr. 183:25 – 184-9. "The free-to-leave inquiry," however, "constitutes a necessary, but not determinative, first step in establishing *Miranda* custody." *United States v. Newton*, 369 F.3d 659, 670 (2d Cir. 2004). Instead, "the 'ultimate inquiry' for determining *Miranda* custody . . . is 'whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'" *Id.* (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam) (quotation marks in *Beheler* omitted)).

Having reviewed Officer Gomez's testimony, as well as the video from Officer Gomez's body camera, the Court agrees with Judge McCarthy that Dunnigan was not in *Miranda* "custody" after he was stopped because "a person stopped under the circumstances at issue would [not] feel that he was 'completely at the mercy of the police.'" *Id.* at 675 (quoting *Berkemer v. McCarty*, 468 U.S. 420, 438 1984)). *See also McCarty*, 468 U.S. at 439-40 (analogizing questioning of stopped motorist to *Terry* questioning and observing that there is an "absence of any suggestion in [the Supreme Court's] opinions that *Terry* stops are subject to the dictates of *Miranda*").

Thus, for the reasons stated above, the Court adopts Judge McCarthy's recommendation to deny Dunnigan's motion to suppress his statements.

## CONCLUSION

For the reasons stated above, the Court adopts Judge McCarthy's Report and Recommendation as to Dunnigan in its entirety. Dunnigan's motion to suppress (Docket No. 10) is therefore denied. The parties shall appear on July 2, 2018 at 12:30 for a status conference.

**SO ORDERED.**

Dated: June 29, 2018            *s/Richard J. Arcara*
    Buffalo, New York         HONORABLE RICHARD J. ARCARA
                                          UNITED STATES DISTRICT JUDGE