UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

    v.                                     **DECISION AND ORDER**
                                               17-CR-119-A

ROMAN DUNNIGAN,

                        Defendant.
_____

       Pending before the Court is defendant Roman Dunnigan's Motion to Change Venue from the Western District of New York to the Southern District of Texas, citing Federal Rules of Criminal Procedure 18 and 21 (Dkt. No. 68). The Government opposed the motion (Dkt. No. 71), and Dunnigan filed a reply (Dkt. No. 74). Oral argument was held before the Court on November 26, 2018. For the reasons stated below, the Court denies Dunnigan's motion.

## BACKGROUND

       The factual background has been set forth in previous decisions issued by this Court denying Dunnigan's motion and supplemental motion to suppress, which are incorporated herein by reference (*see* Dkt. Nos. 53, 116). For the purposes of this motion to change venue, the salient facts are summarized below for ease of review.

       Dunnigan is charged with co-defendant Henry Lloyd in a one-count indictment with conspiracy to possess with intent to distribute, and to distribute, 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), and 18 U.S.C. § 846 (Dkt. No. 1). The indictment alleges that the conspiracy began "in or about May 2017, .

. . and continuing to on or about May 11, 2017, in the Western District of New York, and elsewhere." (Dkt. No. 1).

On May 8, 2017, Dunnigan, Lloyd, and two female companions attempted to fly from Buffalo, New York to Houston, Texas with approximately $64,000 in cash. Dunnigan purchased four plane tickets from Buffalo to Houston that day and he attempted to do so last-minute with cash; a special agent testified at the December 5, 2017 evidentiary hearing that this may indicate criminal activity, and that Houston is a source city for drug transportation to Buffalo. The $64,000 in cash carried collectively between Lloyd and the two female associates at the Buffalo Niagara International Airport was seized following a security screening, and a narcotics-trained K-9 alerted that narcotics were present on the seized currency.

Lloyd and his female associates were then interviewed by law enforcement at the airport. One of the female individuals explained that she had arranged to travel with someone named "Roman", she was flying to Houston for a "celebration", and she was personally carrying $25,000 in cash. The other female individual did not answer any questions about the amount of cash she was carrying. During the interview, Lloyd discretely told law enforcement that he wanted to tell them why they were really heading to Texas, thereby implying that the original reason they gave was untruthful. Given Lloyd's criminal history and the amount of cash divided up among the group of four, law enforcement believed they all were traveling to Houston to purchase drugs.

That same day, after the four fellow travelers either missed or cancelled their flights to Houston, they purchased tickets to fly out of Rochester, New York to Houston.

On May 9, 2017, defendants and their two female companions traveled to Houston from the Rochester airport. A follow-up investigation commenced in Houston after law enforcement in Buffalo contacted the DEA Task Force in Texas. The four individuals were surveilled upon their arrival to Houston, which continued for the duration of their stay. Among other observed activities, shortly after their arrival in Houston, defendants purchased an inflatable chair at a Walmart and took that back to their hotel, and Lloyd exited a vehicle at the hotel holding a small blue bag consistent with the types of bags used for holding drugs.

On May 11, 2017, defendants were arrested after a kilogram of cocaine was located in the rear cargo area of their rental vehicle (inside the inflatable chair box), during a search following a traffic stop and after a narcotics-trained K-9 alerted to the scent of narcotics in the vehicle. Defendants were indicted in this District on June 20, 2017.

## DISCUSSION

### I. Whether Venue is Lacking in the Western District of New York

"Both the Sixth Amendment and Federal Rule of Criminal Procedure 18 require that defendants be tried in the district where their crime was 'committed.'" *United States v. Ramirez*, 420 F.3d 134, 138 (2d Cir. 2005) (citing U.S. Const. amend. VI and Fed. R. Crim. P. 18). When a statute defining an offense does not have specific venue provisions or rules, the *locus delicti*, i.e. site of the offense, is determined from "the nature of the crime alleged and the location of the act or acts constituting it." *United States v. Cabrales*, 524 U.S. 1, 6-7 (1998). Where more than one location is implicated under a continuing offense theory, "venue is properly laid in any of the districts where an

3

essential conduct element of the crime took place", a rule that has been codified in the first paragraph of 18 U.S.C. § 3237(a).  *Ramirez*, 420 F.3d at 139.  Acts considered "merely preparatory" to the commission of the crime will not support venue.  *See United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1190 (2d Cir. 1989).

Conspiracy is a continuing offense under § 3237.  *See United States v. Tannenbaum*, 934 F.2d 8, 12 (2d Cir. 1991).  In a conspiracy prosecution, venue is proper in any district in which "the conspiratorial agreement was formed or . . . an overt act in furtherance of the conspiracy was committed by any of the coconspirators." *United States v. Ramirez-Amaya*, 812 F.2d 813, 816 (2d Cir. 1987); *see United States v. Rosa*, 17 F.3d 1531, 1541 (2d Cir. 1994) (same); 18 U.S.C. § 3237(a) (prosecution is proper "in any district in which such offense was begun, continued or completed").  An overt act in furtherance of a conspiracy will establish venue "even where an overt act is not a required element of the conspiracy offense."  *Whitfield v. United States*, 543 U.S. 209, 218 (2005).

Defendant Dunnigan argues that venue is lacking in the Western District of New York because the indictment does not include factual allegations that the purported conspiracy or any overt acts took place there.  Dunnigan further argues that defendants traveling from the Western District of New York to Houston constituted, at most, a preparatory act rather than an overt act in furtherance of the alleged conspiracy, and thus venue in this District is improper.

At trial, the Government carries the burden of demonstrating the propriety of the chosen venue by a preponderance of the evidence, not beyond a reasonable doubt, because venue is not an element of the crime.  *See Ramirez*, 420 F.3d at 139.  When

faced with a pre-trial venue challenge, however, the Government needs to show only that the indictment alleges "facts sufficient to support venue." *United States v. Bronson*, 2007 U.S. Dist. LEXIS 62210, *11 (E.D.N.Y. Aug. 23, 2007).

Here, the indictment alleges that the conspiracy began "in or about May 2017, . . . and continuing to on or about May 11, 2017, in the Western District of New York, and elsewhere" (Dkt. No. 1). "The law of this Circuit is clear that the Government's burden is satisfied with regard to pleading venue by alleging that criminal conduct occurred within the venue, even if phrased broadly and without a specific address or other information." *Bronson*, 2007 U.S. Dist. LEXIS 62210, at *11 (collecting cases).

The Government contends that it has "more than enough" evidence to establish at trial that venue is proper, and that overt acts in furtherance of the conspiracy were committed in the Western District of New York. According to the Government, the $64,000 in cash seized at the Buffalo airport "is critical when the objective of the conspiracy is to purchase and distribute controlled substances", and travel from the Western District to Houston "was necessary to accomplish the goal of the conspiracy". It points out that defendants were arrested in Houston with the kilogram of cocaine they purchased there, which they intended to ship back to Buffalo (Dkt. No. 71, p. 14). Based upon the information provided by the Government, at least at this stage of the proceedings, any motion to dismiss by Dunnigan based on allegations of improper venue[1] must be denied.

---

[1] Dunnigan's motion is not labeled as a motion to dismiss, and his notice of motion states that it is being made "pursuant to Fed. R. Crim. P. 21(b)". (Dkt. No. 68). However, the Court reads the motion as raising a motion to dismiss argument by his discussion of the Sixth Amendment, Fed. R. Crim. P. 18, and case law such as the *Tzolov* decision.

The authority relied upon by Dunnigan cuts against his argument that venue is improper. In *United States v. Tzolov*, 642 F.3d 314 (2d Cir. 2011), the government's "sole basis" for venue in the Eastern District of New York was that defendant had traveled through John F. Kennedy International Airport and boarded flights on the way to meet with investors. *Id.* at 318. The Second Circuit held that defendant's acts were merely preparatory to the substantive securities fraud count, but the same acts were considered sufficient to establish venue for the securities fraud conspiracy charge as overt acts in furtherance of the conspiracy—because if defendant had not traveled through the Eastern District, the face-to-face meetings with potential investors would not have occurred. *Id.* at 318-321.

The Second Circuit in *Tzolov* also cited its principle that "venue for a conspiracy may be laid in a district through which conspirators passed in order to commit the underlying offense." *Id.* at 320 (collecting cases). Here, a single conspiracy count was charged and no substantive count of narcotics trafficking was charged. The Court's holding in *Tzolov* therefore supports a conclusion that venue is proper in this District. Not only did defendants travel through the District and board flights in order to allegedly purchase cocaine in the Southern District of Texas, they also purportedly committed other overt acts while in this District.

Thus, the branch of Dunnigan's motion based on the Sixth Amendment and Rule 18 is denied without prejudice. *See e.g. United States v. Guobadia*, 2019 U.S. Dist. LEXIS 64429, *14-15 (W.D.N.Y. Apr. 15, 2019).

**II.      Whether the Court Should Transfer Venue to the Southern District of Texas**

At the outset, the Court acknowledges that Dunnigan's motion to change venue remained undecided following oral argument on November 26, 2018, as it was overlooked among the pending proceedings.

"Rule 21 (b) of the Federal Rules of Criminal Procedure provides that where it appears that an offense was committed in more than one district or division and the court 'is satisfied that in the interest of justice the proceeding should be transferred' to another such district or division than the one wherein it is filed, the court shall, upon motion, transfer the case." *Platt v. 3M (Minnesota Mining & Mfg. Co.)*, 376 U.S. 240, 241 (1964). There are a number of enumerated factors to be considered in deciding such a motion:

> (a) location of the defendants; (b) location of the possible witnesses; (c) location of the events likely to be at issue; (d) location of relevant documents and records; (e) potential for disruption of the defendants' businesses if transfer is denied; (f) expenses to be incurred by the parties if transfer is denied; (g) location of defense counsel; (h) relative accessibility of the place of trial; (i) docket conditions of each potential district; and (j) any other special circumstance that might bear on the desirability of transfer.

*United States v. Asante*, 2017 U.S. Dist. LEXIS 127280, *13 (W.D.N.Y. Aug. 10, 2017), quoting *United States v. Maldonado-Rivera*, 922 F.2d 934, 966 (2d Cir. 1990). A motion under Rule 21(b) is committed to the district court's sound discretion, including a determination of which of the factors deserve the greatest weight in a particular case— no one factor is dispositive. *See Maldonado-Rivera*, 922 F.2d at 966.

The Court finds that on balance, these factors weigh in favor of denying transfer of this case to the Southern District of Texas. The parties agree that the two districts are equally accessible and therefore that factor weighs neither against nor in favor of

7

transfer. However, both defendants are currently residing in the Western District of New York[2] and Dunnigan's counsel is also located here. It bears noting that trying this case in either of the proposed venues will cause both the prosecution and the defense to incur expenses. If the case was transferred, however, the Government argues that it would have to relocate two Assistant U.S. Attorneys, a paralegal, and the Drug Enforcement Administration agents who investigated the case in the Western District of New York.

Dunnigan argues that relevant documents and records are "likely" in Houston relative to the events that occurred there, such as surveillance of defendants, and the traffic stop, search, and arrest—as well as documents establishing defendants' presence and movement in the area. Even so, the Government counters that records from the Houston Police Department were disclosed pertaining to defendants' arrest. While certain prosecution witnesses are located in the Southern District of Texas, as the Government points out, there was no difficulty in securing the appearances of three Houston police officers for the suppression hearing. In addition, the events that triggered the investigation into defendants' activities, the initial surveillance, occurred in the Western District of New York, at the Buffalo and Rochester airports.

Considerations of judicial efficiency and economy counsel against transferring venue at this juncture. A final pretrial conference is scheduled for August 13, 2020, and jury selection is currently set to begin on August 18, 2020. Even as of the date the

---

[2] Since November 4, 2019, Dunnigan has been released from pretrial detention on home confinement in his cousin's residence in the Western District of New York and working from home for his employer (before the arrest and detention of Dunnigan, he was living and working in Atlanta, Georgia). Dunnigan's motion to modify the conditions of his release is pending (Dkt. No. 145). Co-defendant Lloyd was released on conditions, including home confinement with electronic monitoring, on August 7, 2019. On July 2, 2020, the Court denied Lloyd's motion seeking to remove the condition of electronic monitoring but granted his alternative request to impose a curfew instead of home incarceration (Dkt. No. 141).

subject motion was filed by Dunnigan in 2018, he conceded that "significant discovery" and pre-trial litigation had been completed in this case. To transfer venue now would inevitably result in further delay for a new judge to familiarize himself or herself with the case and set the case for trial. Moreover, co-defendant Lloyd notably did not file a motion to transfer venue. Finally, there is nothing to suggest that defendant Dunnigan would suffer prejudice, as opposed to possible inconvenience, by being tried in the Western District of New York.

## CONCLUSION

For the foregoing reasons, defendant Dunnigan's pending Rule 21(b) motion to transfer venue (Dkt. No. 68) is denied, while the branch of his motion regarding improper venue pursuant to the Sixth Amendment and Rule 18 is denied without prejudice.

**SO ORDERED.**

                                    *s/Richard J. Arcara*
                              HONORABLE RICHARD J. ARCARA
                              UNITED STATES DISTRICT COURT

Dated:   July 13, 2020