UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA

                              Plaintiff,

          v.

ROMAN DUNNIGAN,

                            Defendant.

_____

                                       **DECISION AND ORDER**
                                        26-CV-191-A
                                        17-CR-119-A

Before this Court is Defendant/Petitioner Roman Dunnigan's *pro se* motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, ECF #401,[1] as well as his *pro se* motion to appoint counsel, ECF #440.  For the reasons which follow, Dunnigan's motions are **DENIED**.

## I.     <u>BACKGROUND</u>

On September 2, 2020, Dunnigan and his codefendant Henry Lloyd were each convicted by a jury of the sole count set forth in the Indictment against them, which charged them conspiracy to possess with intent to distribute, and to distribute, 500 grams or more of a mixture and substance containing cocaine, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(B).  ECF #1, #198.  On April 4, 2023, this Court sentenced Dunnigan principally to a term of imprisonment of 264 months.  ECF #337.

_____

[1] References herein, unless otherwise indicated, are to docket items contained on the Electronic Case File (ECF) in the WDNY case captioned *United States v. Henry Lloyd and Roman Dunnigan*, 17-CR-119-A.

### A. The Investigation

On May 8, 2017, Drug Enforcement Administration Special Agent (SA) Mark Gentile received information that a group of individuals carrying large sums of cash were attempting to travel by plane from Buffalo, New York, to Houston, Texas. SA Gentile responded to the Buffalo airport and when he arrived, Transportation Security Agency (TSA) officers were already speaking with codefendant Henry Lloyd, Lloyd's girlfriend, Breona Gibson, and Shianne Gaddis. ECF #215, pp. 5-6. Upon seeing Gaddis being led away by authorities, Dunnigan, who could be seen on airport security footage nearby as the TSA officials questioned the others, left the airport without speaking to any of his travel companions or authorities. *Id*., pp. 56-78.

When questioned by the law enforcement officers, Lloyd told them he was carrying $8,000. *Id*., p. 15. In fact, he had nearly $15,000 in his luggage. *Id*. Gibson had $24,000 in cash and Gaddis had $25,000 in cash. *Id*., pp. 6-7. Authorities seized the $64,000 cash. *Id*., p. 9. Lloyd then pulled SA Gentile aside and told him that he wanted to meet separately so that he could tell SA Gentile what was "going on." *Id*., pp. 18-19. SA Gentile later contacted Lloyd and arranged to meet with him the next morning. *Id*.

The next day, Lloyd called SA Gentile and told him that he was unable to meet that morning but could meet three days later, on Friday. *Id*., pp. 19-21. SA Gentile and Lloyd subsequently agreed that they would meet on Monday, May 15, 2017. *Id.* Just thirty minutes after speaking with Lloyd, SA Gentile learned why Lloyd had postponed their meeting: Lloyd was at the airport in Rochester, New York, and was

about to fly out to Houston with Dunnigan, Gibson, and Gaddis. *Id*., pp. 20-21.  SA Gentile notified his DEA counterparts in Houston as to Lloyd's and Dunnigan's travel arrangements.  *Id*.

On May 9, 2017,  officers of the Houston Police Department (HPD) learned that Dunnigan, Lloyd, and two women were traveling from New York to Houston and began surveilling Dunnigan and Lloyd upon their arrival in Houston.  Lloyd and Dunnigan checked into a Crowne Plaza hotel. ECF #216, p. 5.[2]

The following day Dunnigan and Lloyd were surveilled as they went to several big box stores and purchased a grey inflatable pool chair that was packaged in a small rectangular box with orange marking, branded "Intex." ECF #216, pp. 6-10.  Later, Dunnigan was observed to get into a BMW that had arrived at the Crowne Plaza.  The BMW engaged in counter-surveillance measures, and despite losing sight of the vehicle, after about an hour, the BMW returned to the Crowne Plaza and Dunnigan was seen carrying a blue bag into the hotel.  ECF #229, pp. 816, 827, 830.

On May 11, 2017, Dunnigan walked out of the Crowne Plaza hotel and put the Intex box in the cargo area of the black SUV he and Lloyd were using. ECF #216, p. 18. Dunnigan and Lloyd left in the SUV, and upon observing a vehicle and traffic violation, an HPD Officer performed a traffic stop. ECF #216, pp.18, 31.

Lloyd and Dunnigan were questioned separately and provided conflicting information. (ECF #216, pp. 30-40). A canine sniff of the vehicle was positive, as the

---

[2] The Crowne Plaza Hotel at which Lloyd and Dunnigan were observed was located near the 7600 block of Katy Freeway. ECF #216, p. 5.

dog alerted to marijuana located in the center console. GEX 4A, 19:36 -21:00; ECF# 33, pp. 190-209; ECF #100, pp. 1-90.[3]  Inside the Intex box in the cargo area of the SUV, the HPD discovered a brick of cocaine wrapped in the inflatable chair. GEX 4A, 23:24-24:45. Five black LG flip phones and $3,800 were also discovered.[4]  While Dunnigan was in the back of an HPD vehicle, he was recorded on the car's camera using his Apple watch to tell Gaddis to leave the hotel room and to go to the airport. GEX 4B, 33:30-34:00, ECF #216, pp. 58-68.

On June 6, 2017, the Erie County Sheriff's Office executed a search warrant at an apartment (Apartment 104) located at 1807 Elmwood Avenue, Buffalo, New York, which was rented in the name of "David Thomas."  Upon executing the warrant, officers recovered two boxes for Intex inflatable products, a bag containing 343 grams of butyryl fentanyl, a bag containing 177 grams of suspected cocaine, $5,578 in cash, digital scales with drug residue, a box of baking soda, clear sandwich bags, two black LG flip phones, a measuring cup with residue, a loaded 9mm handgun along with a Macy's store receipt bearing Dunnigan's name. ECF #216, pp. 95-109; ECF #217, pp.4-58. Later laboratory testing confirmed that the DNA mixture found on the firearm recovered from the apartment was 10,500 times more likely to have come from Dunnigan as one of the contributors as opposed to three unknown contributors in the U.S. population. ECF #217, pp.100-101.  Further, one of the phones recovered from

---

[3] References preceded by "GEX" are to Government Exhibits admitted at trial.

[4] Lloyd told officers that two of the phones belonged to him, while the three remaining phones belonged to Dunnigan. ECF #216, pp. 90-91.

Apartment 104 was registered to a subscriber address of 8412 Katy Freeway in Houston, Texas, *see*, GEX 24, and another phone contained a text message to "Bonez," *see*, GEX 22D, and listed "Boonie" as a contact with two numbers, *see*, GEX 22A, p.5. A nickname for Dunnigan is "Bones," *see*, GEX 35A, and a nickname for Lloyd is "Boonie." ECF #219, p. 24.

### B. The Suppression Hearing:

Prior to trial, Dunnigan moved to suppress evidence seized from the car and any statements made by him during the May 2017 traffic stop in Houston. ECF #10. A suppression hearing was held, and at the conclusion of that hearing, the Court denied Dunnigan's suppression motion.

### C. Trial and Post-Trial Proceedings

Trial commenced on August 20, 2020. The Government called twenty-one witnesses. DEA SA Gentile and Niagara Frontier Transit Authority (NFTA) Detective John Politowski testified regarding what happened at the Buffalo airport on May 8, 2017. ECF #215. Three HPD Officers testified concerning the events in Houston. ECF #216. The jury further heard testimony from Erie County Sheriff's Detectives Adam Imiolo, William Granville, Patrick McMahon, Timothy Carney, and Timothy Donovan, who participated in the search of Apartment 104, 1807 Elmwood Avenue and testified regarding the items seized from Apartment 104. ECF #216, #217.

DNA, firearms, and chemical analysis experts all testified regarding their forensic analysis of various items of evidence collected in the investigation.

Dunnigan also testified in his own defense and claimed that the kilogram of cocaine seized in Houston belonged to him alone, and he intended to break it down and sell it to "sniffers or coke heads" while in Houston. ECF #219, p. 104, p. 150. According to Dunnigan, neither Lloyd nor his other travel companions had any knowledge of his plans to buy and sell cocaine, and Lloyd had no knowledge of the contents of the box. Dunnigan denied having a connection to Apartment 104 but admitted that he leased a different apartment in the same building of 1807 Elmwood Avenue. ECF #229.

On September 2, 2020, the jury returned a verdict convicting Dunnigan as charged of conspiracy to possess with intent to distribute and quantity of a mixture or substance containing cocaine and that the amount of cocaine involved in such offense was 500 grams or more.  ECF #198.

On September 17, 2021, United States Probation prepared a Revised Pre-Sentence Investigation Report (PSR), *see*, ECF #275, which was further revised on several occasions.  ECF #279, #291, #300, #332, and #334.  Dunnigan, through his attorney, objected to the inclusion of the drugs found in Apartment 104 of 1807 Elmwood Ave as part of relevant conduct, and to the application of USSG § 2D1.1 enhancements for maintaining a premises for drug trafficking and for possession of a dangerous weapon. ECF #277.  This Court overruled Dunnigan's objections in a written decision and order entered on April 3, 2023. ECF #335.  In so doing, the Court determined that Dunnigan, with a total offense level of 36, and a Criminal History Category of IV, faced an advisory Guidelines range of imprisonment of 262 to 327

months, and a statutory minimum term of incarceration of 5 years and a maximum of 40 years. *Id.*, p. 19. On April 4, 2023, Dunnigan was sentenced principally to a term of imprisonment of 264 months. ECF #337.

Dunnigan appealed his conviction and sentence to the Second Circuit Court of Appeals. ECF #339. Among the issues raised on appeal, were his claims that this Court erred in denying his motion to suppress the evidence seized during the Houston car search; that the evidence was insufficient to convict him; and that his sentence was procedurally unreasonable. On July 25, 2025, the Second Circuit issued its mandate affirming Dunnigan's conviction and sentence. *See*, ECF #390; *United States v. Dunnigan*, No. 23-6353, 2025 WL 470300 (2d Cir. Feb. 12, 2025).

Following the filing of a *pro se* motion appoint counsel, *see*, ECF #400, Dunnigan, on February 2, 2026, timely filed the instant motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255. ECF #401. While Dunnigan's motion identifies seven different grounds for his motion, *i.e.*, "Ground One" through "Ground Seven," his arguments are largely presented in a conclusory, outline form. *See*, ECF #401, pp. 7-10. This Court will, as it must, construe each of the "Grounds" he identifies liberally and interpret them to raise the strongest arguments that they suggest. *See*, *Hunter v. McMahon*, 75 F.4th 62, 67 (2d Cir. 2023). So viewed, his claims may reasonably be construed to raise the following issues: (1) that his trial counsel was ineffective for: (a) failing to move to suppress or exclude Elmwood Avenue evidence; (b) failing to have DNA analyst Thomas Grill's testimony precluded on *Crawford* grounds; (c) failing to challenge Deputy William Granville's testimony; and (d) failing

to call the Elmwood Avenue leasing manager to testify on Dunnigan's behalf; (2) that the Court should not have considered the Elmwood Avenue evidence as relevant conduct; and (3) that there is an unwarranted sentencing disparity between Dunnigan's sentence and that of his co-defendant Lloyd. ECF #401.  The Government responded to Dunnigan's claims, *see*, ECF #405, and he replied. ECF #406.

## II.    LEGAL STANDARDS

### A. Section 2255 Motions

Section 2255 permits "[a] prisoner in custody under sentence of a [federal] court" to "move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). To obtain such habeas relief, defendant must demonstrate "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a 'fundamental defect which inherently results in a complete miscarriage of justice.' " *Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000) (quoting *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995)).  As the Second Circuit has explained, "[t]he reasons for narrowly limiting the relief permitted under § 2255 – a respect for the finality of criminal sentences, the efficient allocation of judicial resources, and an aversion to retrying issues years after the underlying events took place – are 'well known and basic to our adversary system of justice.'" *Bokun*, 73 F.3d at 12 (quoting *United States v. Addonizio*, 442 U.S. 178, 184 (1979)).

The filing of a § 2255 motion does not automatically entitle the movant to a hearing, and a hearing is not required where the allegations are "vague, conclusory, or palpably incredible." *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013)

(quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). The District Court has discretion to determine whether a hearing is necessary, *see*, *Pham v. United States*, 317 F.3d 178, 184 (2d Cir. 2003), and where, as here, the judge who presided over the criminal proceedings also considers the § 2255 motion, "a full-blown evidentiary hearing may not be necessary." *Raysor v. United States*, 647 F.3d 491, 494 (2d Cir. 2011).

Generally, "a defendant is barred from collaterally challenging a conviction under § 2255 on a ground that he failed to raise on direct appeal." *United States v. Thorn*, 659 F.3d 227, 231 (2d Cir. 2011) (citation omitted). An exception is made, however, for claims of ineffective assistance of counsel raised for the first time in the Section 2255 motion. *Zhang v. United States*, 506 F.3d 162, 166 (2d Cir. 2007). "[A] defendant who raises on direct appeal ineffective assistance claims based on the strategies, actions, or inactions of counsel that can be, and are, adjudicated on the merits on the trial record, is precluded from raising new or repetitive claims based on the same strategies, actions, or inactions in a Section 2255 proceeding" but "is not precluded from raising new ineffective assistance claims based on different strategies, actions, or inactions of counsel." *Yick Man Mui v. United States*, 614 F.3d 50, 51 (2d Cir. 2010) (*emphasis added*).

For all claims other than ineffective assistance of counsel, if a movant has procedurally defaulted, "he is barred from raising the claim in a subsequent § 2255 proceeding unless he can establish [i] both cause for the procedural default and actual prejudice resulting therefrom or [ii] that he is actually innocent of the crime of

9

which he was convicted." *De Jesus v. United States*, 161 F.3d 99, 102 (2d Cir. 1998) (internal quotations omitted); *see also Campino v. United States*, 968 F.2d 187, 190 (2d Cir. 1992) ("It is generally accepted that a procedural default of even a constitutional issue will bar review under [Section] 2255, unless the defendant can meet the 'cause and prejudice' test." (collecting cases)).

## B. Ineffective Assistance of Counsel Claims

A defendant's right to counsel as guaranteed by the Sixth Amendment "is the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771, n.14 (1970); *see Strickland v. Washington*, 466 U.S. 668, 686 (1984). To establish that counsel was constitutionally ineffective, a defendant must "(1) demonstrate that his counsel's performance fell below an objective standard of reasonableness in light of prevailing profession norms; and (2) affirmatively prove prejudice arising from counsel's allegedly deficient representation." *Parisi v. United States*, 529 F.3d 134, 140 (2d Cir. 2008) (internal quotation marks omitted); *Strickland*, 466 U.S. at 688; *Vadas v. United States*, 527 F.3d 16, 20 (2d Cir. 2007). This presents "a high bar for a defendant, as *Strickland* instructs courts to apply a 'presumption of effective performance.'" *United States v. Nolan*, 956 F.3d 71, 79-80 (2d Cir. 2020) (quoting *Greiner v. Wells*, 417 F.3d 305, 326 (2d Cir. 2005)).

Under *Strickland*'s standard for evaluating ineffective assistance of counsel claims, judicial scrutiny of a counsel's performance must be highly deferential, and every effort must be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the

conduct from counsel's perspective at the time. *Bell v. Cone*, 535 U.S. 685, 698 (2002). "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689.  Indeed, the burden of showing ineffective assistance is a heavy one because, at the first step of analysis, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.

The determinative question in assessing whether counsel's performance was deficient "is not whether counsel 'deviated from best practices or most common custom,' but whether his 'representation amounted to incompetence under prevailing professional norms.'" *Harrington v. United States,* 689 F.3d 124, 129–30 (2d Cir. 2012)(quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011)). The standard for evaluating the adequacy of counsel's representation is "a most deferential one," *Harrington*, 562 U.S. at 105, because "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *United States v. Thomas*, 608 F.App'x. 36, 38 (2d Cir. 2015)(summary order)(citing *Strickland*, 466 U.S. at 690).

To give appropriate deference to counsel's independent decision-making, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Parisi v. United States*, 529 F.3d at 141 (quoting *Strickland*, 466 U.S. at 689). Courts are cautioned against "look[ing]

11

back and project[ing] ex post knowledge of consequences on the attorney's *ex ante* selection of one path among the many available to him[,]" *id*., and must instead "consider the circumstances counsel faced at the time of the relevant conduct and ... evaluate the conduct from counsel's point of view." *Davis v. Greiner*, 428 F.3d 81, 88 (2d Cir. 2005).

Should a § 2255 petitioner clear this first hurdle by demonstrating ineffective performance by counsel, petitioner must next demonstrate actual prejudice from identified errors. *Harrington*, 689 F.3d at 129. That is, Dunnigan must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *Strickland*, 466 U.S. at 694, not merely that an error "had some conceivable effect on the outcome." *Strickland*, 466 U.S. at 693-94. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

## III.    ANALYSIS

### A. Dunnigan Received Effective Assistance of Counsel

#### 1. Failure to Move To Suppress/Exclude Evidence From Elmwood Avenue Premises

Initially, Dunnigan argues that his attorney was ineffective in failing to "move to exclude" the evidence recovered from apartment 104 at 1807 Elmwood Avenue.  ECF #401, pp. 7-8.[5]  Specifically, as "Ground One" in his petition, *see*, ECF #401, p. 7,

---

[5] Although Dunnigan faults his counsel for failing to "exclude" the Elmwood Avenue evidence, Dunnigan's trial attorney did move to preclude the evidence prior to trial on evidentiary grounds, *see*, ECF #177, pp. 4-5, but that motion was denied.  ECF #226,

Dunnigan claims that his attorney erred in failing to prevent such evidence from being used to calculate his relevant conduct. *Id.*  As "Ground Two," Dunnigan alleges that such search violated his Fourth Amendment rights, and thus, his attorney erred in failing to move to suppress such evidence prior to trial.  *Id.*, pp. 7-8 ("Ground Two").

Regarding his first claim that his attorney was ineffective for failing to object to the inclusion of the evidence as part of his relevant conduct, Dunnigan's attorney, prior to trial, did, as noted above, seek to preclude such evidence from being introduced at trial.  *See*, ECF #177.  In denying that motion, this Court determined:

> [D]efendants seek to exclude evidence seized as a result of the search at 1807 Elmwood Avenue, approximately 26 days after the defendants were arrested with a kilogram of cocaine in Houston, Texas. Defendants argue that the seizures are too temporally remote from the alleged conspiracy charged in the indictment and that connection with each of them are too tenuous to warrant admission of the evidence.
>
> The Court has concluded that the fruits of the search at 1807 Elmwood Avenue are sufficiently relevant to the defendant's conspiracy and are admissible. The department store receipt and similarities of inflatable furniture packaging and flip phones, including the purchase records of one of those phones from Houston, the cocaine possession paraphernalia and the firearm located in loose cocaine collectively tends to corroborate other evidence of the conspiracy.
>
> Defense counsel's objections to the evidence that the search was approximately 26 days removed from the defendants' arrest in Houston is well taken, but the Court finds it goes to the weight the jury should give to the evidence, not its admissibility.

ECF #226, p. 5.

---

pp.5-6. In addition, prior to sentencing, Dunnigan's attorney also objected to the inclusion of the Elmwood Avenue evidence as part of Dunnigan's relevant conduct in his PSR and request a *Fatico* hearing in that regard. ECF #299.

Following the guilty verdict, this Court included the evidence seized from that premises as part of Dunnigan's relevant conduct, and on direct appeal, the Second Circuit expressly determined that this Court "did not abuse its discretion in finding the narcotics in the [Elmwood Avenue] stash house to be relevant conduct." *Dunnigan*, No. 23-6353, 2025 WL 470300, at *4.

Under the mandate rule, a § 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal. *Cabrera v. United States*, 972 F.2d 23, 25 (2d Cir. 1992) (quoting *Barton v. United States*, 791 F.2d 265, 267 (2d Cir. 1986) (per curiam)). "The mandate rule prevents re-litigation in the district court not only of matters expressly decided by the appellate court but also precludes re-litigation of issues impliedly resolved by the appellate court's mandate." *Yick Man Mui v. United States*, 614 F.3d at 53 (citation omitted). Moreover, an ineffective assistance of counsel claim that "merely repackages the arguments the petitioner made on direct appeal…is… barred by the mandate rule." *Brown v. United States*, No. 16-CR-297-2 (AMD), 2023 WL 4551682, at *8 (E.D.N.Y. July 14, 2023). Here, since the Second Circuit has already decided that the evidence from the Elmwood search was properly included as relevant conduct for purposes of Dunnigan's sentencing, "Ground One" of his claim is rejected.

With respect to "Ground Two" and his attorney's failure to move to suppress the evidence seized from the Elmwood premises on Fourth Amendment grounds, the Court observes that Dunnigan consistently maintained that he had no connection whatsoever to the apartment (*i.e.*, Apartment 104) on Elmwood from which the

inculpatory evidence was recovered.  ECF #191, pp. 26-34.  It is well-established that Fourth Amendment rights are personal and may not be asserted vicariously. Thus, "courts suppress evidence only 'at the instance of one whose own protection was infringed by the search and seizure.'" *United States v. Lewis*, 62 F.4th 733, 741 (2d Cir. 2023)(quoting *United States v. Williams*, 943 F.3d 606, 610 (2d Cir. 2019)). In view of Dunnigan's self-professed lack of any interest in or connection to the premises searched, Dunnigan's attorney cannot be faulted for failing to challenge a search for which his client lacked standing to challenge.  *See*, *James v. United States*, No. 00 CIV.8818LAKGWG, 2002 WL 1023146, at *5 (S.D.N.Y. May 20, 2002)("where [defendant] lacked standing under the Fourth Amendment to contest the search…his failure to raise the issue to the trial court was not the result of a lapse by his trial counsel.").

Moreover, at trial, Dunnigan's attorney raised a defense which suggested that Dunnigan's actual apartment (Apartment 119) in the same Elmwood Avenue building was broken into a few weeks earlier, which explained why Dunnigan's Macy's receipt was found in Apartment 104 with the drug and gun evidence.  *See*, ECF #191, p. 33 (Dunnigan admitting the receipt was his "but they definitely broke into my house"). This theory was consistent with Dunnigan's testimony that he had no knowledge of Apartment 104. Counsel reasonably decided that the best way to challenge the Elmwood Avenue evidence was to argue to the jury that Dunnigan had no connection to Apartment 104 and the Macy's receipt may have been put there by the same people who broke into his apartment. *See* ECF #258, pp. 96-100 (closing

15

argument).  *See generally United States v. Guerrero*, 882 F. Supp.2d 463, 490

(S.D.N.Y. 2011) ("Merely disagreeing with counsel's strategy and finding it

inadequate is not enough for a defendant to prevail on an ineffective assistance

claim.").  Under all these circumstances, this Court easily concludes that counsel

executed a sound trial strategy and that his performance was objectively

reasonable. It is well-established that "actions or omissions that might be considered

sound trial strategy do not constitute ineffective assistance." *United States v.

Berkovich*, 168 F.3d 64, 67 (2d Cir. 1999) (internal quotation marks omitted).

### 2.  Failure to Object to DNA Testimony on *Crawford* Grounds

Dunnigan next claims, as "Ground Three" for his motion, *see*, ECF #401, p. 8,

that his attorney was ineffective in failing to object on *Crawford* grounds to the

government's introduction of DNA evidence obtained from a firearm seized at the

Elmwood Avenue apartment.  Dunnigan's argument is not developed at all, however,

as his claim merely states, "DNA through surrogate, not analyst."  *Id*.

Prior to trial, the Government filed a motion *in limine* regarding this very issue

and the propriety of introducing such evidence through an expert other than the one

who performed the actual analysis in this case. ECF #161, pp. 18-21.  While

Dunnigan's attorney did not object to the introduction of the DNA evidence on

*Crawford* grounds, he did object on other grounds.  As this Court stated in ruling on

various pretrial motions *in limine* regarding the DNA evidence:

> [D]efendant Dunnigan has moved to exclude expert opinion
> evidence regarding the DNA sample extracted from the firearm seized

from 1708 Elmwood Avenue. Defendant Dunnigan concludes that two expert reports, one concluded that the DNA is -- did not match any DNA profile in a particular database of the DNA profiles and the other assessing the statistical possibility that the defendant's DNA could be on the firearm are conflicting. However, the reports are not conflicting. Contrary to defense counsel's argument, the reports finding the statistical probability that the defendant's DNA was on the firearm is not irrelevant under the Federal Rules of Evidence. Defendant Dunnigan's motion in limine to exclude the DNA evidence is, therefore, denied.

Now, the United States has moved in limine to permit an expert witness to testify about the DNA results, even though the witness did not personally perform the testing that underlies the expert opinion. That is certainly permissible under the Federal Rules of Evidence 703. The defendant Dunnigan did not oppose United States's motion. That motion is granted.

ECF #226, pp. 6-7.

In *Williams v. Illinois*, the Supreme Court held that an expert forensic analyst may testify about a DNA match based on a scientific report developed by non-testifying analysts without violating the Confrontation Clause. 567 U.S. 50, 71 (2012), *abrogated by Smith v. Arizona*, 602 U.S. 779 (2024). Relying on *Williams*, the Second Circuit in *Washington v. Griffin,* 876 F.3d 395 (2d Cir. 2017), held that an expert could testify about a match between the crime scene DNA and the defendant's where the expert had performed the final comparison but had not personally tested the defendant's buccal swab herself. *Id.*, at 407 ("[T]he Supreme Court has never held that the Confrontation Clause requires an opportunity to cross-examine each lab analyst involved in the process of generating a DNA profile and comparing it with another.").  In view of the foregoing, counsel's failure to raise a losing argument does not constitute ineffective assistance. *See, United States v. Davis*, 122 F.4th 71, 76 (2d Cir. 2024) ("[I]t is well settled that failure to make a

meritless argument does not amount to ineffective assistance.") (citation and internal quotation marks omitted).

### 3. Failure to Challenge Granville's Testimony

Dunnigan claims in conclusory fashion, as "Ground Four" for his motion, *see*, ECF #401, p. 8, that his attorney was ineffective for failing to review *Jencks* material before trial and failing to investigate Deputy William Granville's relationship to D.J. Granville, who supervised the Erie County Sheriff's Department Narcotics Unit. Dunnigan speculates that his attorney failed properly to cross-examine William Granville at the trial and therefore did not uncover alleged police misconduct committed by members of the Erie County Sheriff's Department.  In making his claim, Dunnigan's argument is not premised on any facts relating to his own case, but rather on subsequent events arising in a completely unrelated case before this Court— *United States v. David Burgin*, WDNY Docket 20-CR-29-A.  In *Burgin*, this Court in granted a motion to suppress certain evidence obtained in that case through the February 2020 search of a premises at 56 Grimes Street in Buffalo, NY. In so doing, this Court determined that Detective DJ Granville—who apparently is the brother of Deputy William Granville, one of the law enforcement witnesses who testified in Dunnigan's case—provided certain explanations regarding that search while testifying at the *Burgin* suppression hearing which this Court did not believe. *See*, *United States v. Burgin*, No. 20-CR-29-A, 2025 WL 1527033, at *15 (W.D.N.Y. May 29, 2025), *appeal dismissed*, No. 25-1634, 2025 WL 2784470 (2d Cir. July 11, 2025).

As pertinent here, Dunnigan is essentially arguing that his attorney was ineffective in failing to discover (and, relatedly, that the Government engaged in misconduct through "prosecutorial concealment," *see*, ECF #401, p. 10 ("Ground Seven"), by withholding) an adverse credibility finding that did not exist at the time of Dunnigan's prosecution.  Indeed, such adverse credibility finding, made by this Court in 2025, years after Dunnigan's trial was over, followed a suppression hearing in an unrelated case (i.e., *United States v. Burgin*, No. 20-CR-29-A, 2025 WL 1527033, at *15 (W.D.N.Y. May 29, 2025), that involved the search of an unrelated location (*i.e.*, 56 Grimes Street) conducted by the brother (*i.e.*, DJ Granville) of one of the deputy sheriffs (*i.e.*, William Granville) who testified in this case regarding the search of 1087 Elmwood Avenue.  The lack of any connection between the two investigations, the locations involved, the people being investigated, and the officers involved in each search undermines Dunnigan's claim. Further, the complete absence of any evidence suggesting that there was any police misconduct in this case renders Dunnigan's claim in this regard frivolous.  "Without providing any suggestion of what purported exculpatory information was withheld, petitioner does not meet his burden, and, accordingly, does not demonstrate deficient performance by counsel." *Margiellos v. United States*, No. 13-CR-00640 (JFB), 2018 WL 5801540, at *10 (E.D.N.Y. Nov. 6, 2018)(citing *United States ex rel. Jiggetts v. Follette*, 308 F. Supp. 468, 471 (S.D.N.Y. 1970), aff'd, 446 F.2d 114 (2d Cir. 1971) (rejecting *Brady* claim when "[p]etitioner [was] engaging in mere unsupported speculation").

Finally, even assuming *arguendo* that he could establish some misconduct regarding the Elmwood Avenue search—which he has not—Dunnigan, having denied any possessory or privacy interest in the apartment, lacks standing to seek the exclusion of any of the evidence recovered.  Consequently, he cannot establish that his "counsel's representation fell below an objective standard of reasonableness" determined according to "prevailing professional norms." *Strickland*, 466 U.S. at 688.

### 4.  Failure to Call the Leasing Manager

Dunnigan's final claim of ineffective assistance pertains to counsel's failure to call the leasing manager at the Elmwood Avenue apartments. Notably lacking from his claim, however, is any evidence at all regarding what such manager would have said or how it would have assisted his defense. Under the *Strickland* standard, trial counsel's performance must be *objectively* unreasonable. "In light of this highly deferential standard, the Second Circuit has defined conduct to be unreasonable only where there is no plausible trial strategy justifying counsel's behavior." *United States v. Jacobs*, 270 F.Supp.2d 293, 297 (D.Conn.2003); *see also Strickland*, 466 U.S. at 689 (in assessing an ineffective assistance of counsel claim, the Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and that counsel's conduct was not the result of error but derived instead from trial strategy).  In other words, if a reasonably effective attorney faced with the circumstances present in this matter could have chosen, as a matter of strategy, not to call such witness, it is not the role of this Court to attempt to

20

*ex post facto* determine whether Petitioner's counsel in fact was acting out of legitimate strategic reasons or for some other purpose. *See, Jordan v. United States*, 190 F. Supp. 3d 331, 337 (W.D.N.Y. 2016).

Presumably, Dunnigan believes the leasing manager would have testified to who rented Apartment 104, thereby linking the drug and gun evidence to someone else. The defense already had this evidence before the jury though. The defense pointed out that within Apartment 104 law enforcement seized a National Fuel bill in the name of David Thomas for Apartment 104. GEX 31A. Defense counsel also argued that Dunnigan's own apartment within the same complex was burglarized and that's why his Macy's receipt was found in Apartment 104. The testimony of the leasing manager would have simply been cumulative of evidence already before the jury.  "The failure to call cumulative or repetitive witnesses is neither ineffective nor prejudicial." *Skinner v. Duncan*, 01 Civ. 6656, 2003 WL 21386032 at *38 (S.D.N.Y. June 17, 2003) (Peck, M.J.) (citing cases); *see also*, *White v. Keane*, 51 F.Supp.2d 495, 505 (S.D.N.Y.1999) (Court rejected petitioner's claim that counsel was ineffective for failing to call witnesses where their testimony was "speculative, repetitive, vague, or related solely to the issue of credibility of one of the [prosecution]'s many witnesses.").

### B. <u>Sentencing Issue/*Fatico* Hearing/Relevant Conduct</u>[6]

As "Ground Five" of his motion, *see*, ECF #401, pp. 8-9, Dunnigan, making an argument similar to that raised in his ineffective assistance claim predicated on his attorney's failure to seek to suppress the evidence obtained from Elmwood Avenue, *see*, Section III(A)(1), *above*, maintains that this Court erred in relying upon the evidence seized from Elmwood Avenue as relevant conduct for his sentencing and in failing to conduct a *Fatico* hearing. Prior to sentencing, this Court issued a written Decision and Order explaining the basis for its determination that the evidence seized from the Elmwood Avenue apartment should be included as part of Dunnigan's relevant conduct. ECF #335, pp. 3-5. The Second Circuit affirmed that determination on appeal. *Dunnigan*, No. 23-6353, 2025 WL 470300, at *4 (finding that this Court "did not abuse its discretion in finding the narcotics in the [Elmwood Avenue] stash house to be relevant conduct."). Accordingly, Dunnigan's claim is foreclosed by the mandate rule. *United States v. Hicks*, No. 15-CR-33-RJA, 2025 WL 3640883, at *3 (W.D.N.Y. Dec. 16, 2025).

---

[6] While Dunnigan's motion also claims an *Apprendi* violation occurred, *see*, ECF #401, p. 8, such claim is meritless. *Apprendi* requires that any fact that increases the minimum or maximum penalty to be submitted to the jury. *See*, *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). Here, the jury verdict specifically determined the drug quantity involved in Dunnigan's offense. ECF #198, p.3. The Elmwood Avenue evidence was properly considered as relevant conduct to Dunnigan's offense of conviction and did not increase the minimum or maximum statutory penalties.

### C. Sentencing Disparity Between Dunnigan and Codefendant Lloyd

Finally, as "Ground Six," *see*, ECF #401, pp. 9-10, Dunnigan seeks relief under Section 2255 due to the disparity between his sentence and that of his cooperating codefendant Lloyd. "The Constitution permits qualitative differences in meting out punishment and there is no requirement that two persons convicted of the same offense receive identical sentences." *Williams v. Illinois*, 399 U.S. at 243. "Absent extraordinary circumstances, a defendant has no constitutional or otherwise fundamental interest in whether a sentence reflects his or her relative culpability with respect to his or her co-defendants." *United States v. Bokun*, 73 F.3d at 12. Therefore, the disparity in the two sentences between codefendants does not raise a constitutional issue, and Dunnigan is not entitled to relief. *See*, *Id.* (relief under § 2255 is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice.").

### IV.    CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that Dunnigan's Petition seeking to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, *see*, ECF #401, is **DENIED**; and it is further

**ORDERED** that Dunnigan's motion for appointment of counsel, *see*, ECF #400, is **DENIED**; and it is further

**ORDERED** that no certificate of appealability with respect to this Court's denial of said motions shall issue because Dunnigan has not shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see* 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."). Moreover, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is directed to mark as "CLOSED" the corresponding civil case, Case No. 26-CV-191-A, and a copy of this Decision and Order shall be mailed to Dunnigan at his address of record, including the notation "LEGAL MAIL" on the mailing envelope.

**IT IS SO ORDERED.**

*s/Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
SENIOR U.S. DISTRICT JUDGE

Dated:  April 13, 2026
        Buffalo, New York

24